UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
DAPHNE MCKINNEY           *       CIVIL NO. 3:01CV01407 (MRK)
        Plaintiff     *
                      *
V.                        *
                      *
STATE OF CONNECTICUT,     *
DEPARTMENT OF             *
TRANSPORTATION            *
        Defendant     *       DECEMBER 3, 2003
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFF'S MOTION IN LIMINE AND OBJECTION**

**I.  STATEMENT OF FACTS**

This matter involves an African American female who has worked for the Department of Transportation ("defendant") for more than ten (10) years. Although periodically Daphne McKinney (the "plaintiff") has performed professional tasks well beyond her job descriptions as a Transportation Planner I, she has never been promoted.[1]

The incident which gives rise to the instant matter arose in September of 1999 when a number of plaintiff's Caucasian, white cohorts, all of whom were either equally or less qualified than the plaintiff, were promoted to Transportation Planner II. The pay differential between Transportation Planner I and II has been approximately Four Thousand Dollars ($4,000.00) per year. When the plaintiff began to openly question why she had not received a promotion like her similarly situated colleagues who were

---

[1] Plaintiff received a reclassification in April 1995 from Career Trainee to Transportation Planner I.

2

certainly no more qualified than she, she was met with professional retaliation which culminated in many of her job responsibilities being taken away.

Importantly, along with the plaintiff being denied a promotion which her own supervisor, Brian Chapman, indicated she was qualified for and deserving of, plaintiff has complained of a pattern and practice of discrimination within the defendant's workplace. Additionally, plaintiff has complained of a hostile work environment and disparate treatment as compared to other similarly situated Caucasian, white employees within the Department. In this connection, plaintiff has asserted various violations of 42 U.S.C. §2000e.

It is also significant to note that the defendant, even while the plaintiff was being passed over for promotion to Transportation Planner II in September of 1999, was under a Consent Decree issued by the Commission on Human Rights and Opportunities ("CHRO") whereby it was required to seek permission from the CHRO to make promotions which varied in any material respect from those mandated by the defendant's Affirmative Action Plan. Presently, there are no African Americans in high ranking managerial positions within the defendant and as a result numerous lawsuits have been brought by African American employees who, like the plaintiff, have been discriminatorily passed over for managerial promotions.

**II.     ARGUMENT**

   **A.     Subsequent Discovered Evidence**

Defendant asserts at Page 9 of the Joint Trial Memorandum, Para. 5, that it

3

"discovered" subsequent evidence of plaintiff's misconduct which, in effect, justified its decision to fail to promote the plaintiff in September of 1999. Plaintiff responds by suggesting that this "subsequently discovered evidence" is nothing more than a blatant attempt to introduce after-the-fact, contrived testimonial support for defendant's admitted failure to promote the plaintiff to Transportation Planner II. As a general rule, irrelevant evidence is inadmissible at trial. See, e.g., Sec. 4.2.3 of *Tait's Handbook of Connecticut Evidence*, 3rd Ed.

Irrelevant evidence is defined as that which has "no tendency" to make a fact more or less probable. Further, evidence is deemed irrelevant and/or too remote if there is no viable nexus between the evidentiary proffer and the facts at issue; this lack of nexus makes the evidence unworthy and unsafe to be admitted for the trier of fact. See, e.g., *State v. Kelly*, 77 Conn. 266, 269 (1904); *Fed. R. of Ev.* 402. As allegations by Brian Chapman and/or Dennis Jolly concerning the plaintiff's work performance *subsequent* to September of 1999 are intended by the defendant to be offered to justify its previous decision not to promote the plaintiff, the nexus is far too remote to be worthy of admission before the trier of fact. Moreover, said evidence is unduly prejudicial and is intended for no other reason but to confuse and/or unfairly prejudice the trier of fact. See, *Chouinard v. Marjani*, 21 Conn. App. 572, 576 (1990).

**B.    Defendant's Settlement Offers**

Defendant has indicated on Page 9 of the Joint Trial Memorandum at Para. 6 that they intend to introduce at least one settlement offer to the plaintiff wherein it made an "unconditional offer" to the plaintiff to be placed in a Transportation Planner

4

II position. Rule 408 of the *Fed. R. of Ev.* clearly indicates that evidence of conduct or statements made in compromise negotiations and/or which infer an intent to settle are not admissible. Hence, for defendant to attempt to simplistically suggest that the plaintiff failed to mitigate her damages because she refused to accept a settlement offer which was wholly inadequate given the nature of her provable damages is an uncontroverted breach of the letter and spirit of Rule 408 of the *Fed. R. of Ev.* and is instead once again intended to unduly prejudice the jury's perception of the plaintiff. See e.g., *Batick v. Seymour*, 186 Conn. 632 (1982); *Trebor Sportswear Company v. The Ltd. Stores, Inc.*, 865 F.2d 506 (2d Cir.1989).

### C.    The Plaintiff's Gynecologist

Apparently, the defendant, in addition to subpoenaing the treaters listed in the plaintiff's portion of the Joint Trial Memorandum, dated June 19, 2003, has also sought to subpoena the plaintiff's gynecologist, Dr. Linda Taylor, as well as all of the plaintiff's gynecological records. While plaintiff's counsel has not received the courtesy of a copy of the subpoena, and cannot precisely, therefore, comment on its scope and breadth, it is certainly not premature for the plaintiff to raise the issue of relevancy with respect to defendant's unreasonable intrusion into the plaintiff's privacy. As no claim has been made by the plaintiff with respect to any affect defendant's actions have had on her gynecological health and/or well being, it is beyond the pale for defendant to demand Dr. Taylor's presence at the December 10th trial.

Inasmuch as plaintiff has made absolutely no claim with respect to her gynecological dimension of her overall health, but instead has made claims limited to

5

her emotional and/or physiological status, this circumvention of discovery should not be allowed. While plaintiff concedes that both her emotional and physiological aspects of her medical profile are fertile ground for the defendant to fish, clearly it should be precluded from rummaging through totally unrelated and irrelevant medical records which have no bearing on this case. In plaintiff's view, this evidence is not only inadmissible as irrelevant, but also will inevitably lead to confusion of the issues and thereby mislead the jury. See *Fed. R. of Ev.* 402 and 403.

### D.     The Testimony of Plaintiff's Co-workers

Defendant has, as of yesterday delivered to the plaintiff's attorney a Motion in Limine attempting to preclude the testimonies of a number of plaintiff's African American co-workers who have not only observed the hostile work environment and disparate treatment of the plaintiff, but have also experienced the same in their individual capacities. Plaintiff hereby objects to defendant's Motion to Preclude because it fundamentally misapprehends the proffer she intended with respect to these individuals. Plaintiff's African American co-workers' testimonies are not offered for the purpose of eliciting their "lay opinion," but rather to allow the trier of fact to hear and consider their observations with respect to the hostile work environment, disparate treatment and pattern and practice of discrimination within the workplace.[2] Hence, it is clearly proper for the plaintiff, pursuant to *Fed. R. of Ev.*, 401, to allow other African Americans who have experienced discrimination and retaliation within the same workplace to testify regarding their observations and experiences. Moreover, to the

---

See Para. 13 of plaintiff's Amended Complaint dated August 20, 2001.

6

extent that discrimination, retaliation and disparate treatment has been experienced by other African Americans within the corporate culture of the defendant, it is also relevant on the grounds that it constitutes a routine practice within the defendant workplace. See also Rule 406 of the *Fed. R. of Ev.*

While defendant would have this Court believe that other African American co-workers' testimony will constitute in each case a "trial within a trial" this is simply without merit. Plaintiff should be permitted a reasonable opportunity to prove, not only through her own testimony and documentary evidence, but also through others who have experienced the hostile environment perpetrated and fostered by the defendant, and observed her in it, the fact that it exists. Importantly, plaintiff will not seek the opinion of any of plaintiff's co-workers as to whether or not they believe defendant's failure to promote the plaintiff was as a result in whole or in part due to her race.

PLAINTIFF, DAPHNE MCKINNEY

BY: W. Martyn Philpot
Law Office of
W. Martyn Philpot, Jr., LLC
409 Orange Street
New Haven, CT 06511
Tel: (203) 624-4666
Federal Bar No. ct05747
Her Attorneys